THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. F. B. HINE.

No. 89.

NEW TRIAL — *special findings in conflict with evidence, ground for.* Where the special findings of the jury are directly in conflict with all the evidence in the case, and are not supported by any evidence, it is the duty of the trial court to set the verdict aside and grant a new trial.

Error from Edwards District Court. Hon. Samuel W. Vandivert, Judge. Opinion filed January 6, 1897. *Reversed.*

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for plaintiff in error.

*F. D. Smith,* for defendant in error.

COLE, J. This action was brought by defendant in error to recover the value of a house and barn alleged to 'have been destroyed by fire caused by sparks from one of defendant's engines. From a verdict and judgment against it, the Railroad Company brings the case here for review. A number of questions are raised by the briefs of counsel, but from our view of the case there is but one question that needs to be discussed at this time.

It is urged by plaintiff in error that the trial court should have set the verdict aside, because the special findings of the jury were wholly unsupported by the evidence, and were contrary to all the evidence in the case. After a careful examination of all the evidence and the findings, we are of the opinion that this position is well taken. The jury found, in answer to special questions, that the fire in question was caused by the negligence of the defendant Company ; and that the negligence consisted in the fact that the engineer in charge of the engine in question took it out without its having been properly inspected. The jury found further that the engineer was careless in that he operated his engine without having the netting in proper condition to prevent the escape of an unusual ·amount of sparks. The jury further found that the engine was not in good condition in that the netting was out of repair so as to allow an unusual amount of sparks to escape. They found, however, that the engine was of the most approved pattern, and provided with the latest appliances to prevent the escape of fire, and found no other act of negligence upon the part of the Company or any of its servants. This simplifies the question demanding our attention, and we have only to inquire whether the record discloses

any evidence showing that the wire netting used in the engine was out of repair. Of course, if there is a conflict in the evidence, then this court cannot set aside the verdict; neither ought the lower court to have done so. But while the act of 1885 shifted the burden of proof with regard to negligence in cases of this character, yet we do not understand that the act intended to make railroad companies insurers of property, or to raise a presumption of fact in an action brought against a railroad company for damages, but rather one of law.

' The act prescribes in substance that, when it shall have been shown that a railroad company has set out a fire, negligence shall be presumed until the contrary is shown; but, when the legal presumption has been fully rebutted by positive testimony, it remains the duty of the plaintiff in such an action to show proof of negligence as much now as before the passage of the act of 1885. It is not claimed by counsel for defendant in error that there is any direct proof that the netting in the engine in question was out of repair, but it *is* claimed that the jury had a right to find such a fact from the evidence given in the case. It is urged that the evidence of the Railroad Company itself shows that the engine was permitted to leave upon its trip from Newton to Dodge City, on the day when the fire is alleged to have occurred, without being properly inspected. The testimony, so far as it relates to this question, is as follows. Henry Johnson, the engineer, says :

" Ques. Is it not a fact that all engines of every pattern throw more or less sparks ? Ans. Of course they throw some sparks.

" Q. You say this spark-arrester was in good condition; how do you know that? A. By the man that examined it.

"Q. You do n't know that of your own personal knowledge do you? A. Yes, sir, I do.

"Q. How do you know that? A. I looked at it."

"Q. How did you look at it? A. There is a door on the side to look at it and I looked at it through that.

"Q. You looked at it through that did you? A. Yes, sir."

"Q. This spark-arrester is composed of netting is it not? A. Yes, sir.

"Q. There might be small holes in that netting and you would not see them, might there not? A. Yes, there might be; it is not probable though.

"Q. Could you tell whether there were holes in that netting by looking through that hole in the side? A. Yes, sir, I could.

"Q. How could you do it? It is dark in there is it not? A. Yes, but I looked in it with a torch.

The examination which this witness testified to was made by him on the morning of the twenty-seventh of February, when he took out the engine in question. There was further testimony tending to show that an examination of this engine had been made on the twenty-fifth day of February. The witness Thomas Paxton testified as follows:

"Ques. These front-end extensions have a side door? Ans. Yes, sir.

"Q. How large is that? A. The opening is about eight inches large.

"Q. Eight inches across? A. Yes, sir.

"Q. What is the purpose of that door? A. It has one purpose and that is to let an inspector make an examination of the interior of the front end; to look into, and see the condition of the netting."

There was further testimony by another witness, known as an inspector, with regard to the condition of the netting on the twenty-fifth day of the same month, which showed that upon said date the netting

752        A. T. & S. F. Rld. Co. v. Hine.

S. Dept.              Opinion.   Cole, J.            5 Kan. App.

was in proper condition.   The defendant in error urges that this testimony shows that the inspection on the morning of the twenty-seventh was not made by an inspector, although it should have been, and that the inspection which was made by the engineer was not what it ought to have been.   We do not understand the main question at issue to be when or what kind of an inspection was made, but, what was the condition of the engine?   The engineer testified positively as to its condition on the morning the fire occurred, and there is no evidence to the contrary.   The evidence with regard to the inspections which were made, simply goes to fortify the direct and positive evidence upon that point.   It is true that the witness Smith, called by the defendant in error, testifies that he saw the train in question pulling out of Kinsley, and that the engine was throwing a good many sparks.   But it is a matter of common knowledge that when an engine starts with a freight train from a depot it will throw sparks, and the jury had no right from this piece of testimony to build one presumption upon another and say that, because the engine threw a number of sparks when it started from the depot, it was throwing sparks when it reached the place where the buildings which were destroyed by fire were situated, and that the number of sparks thrown was unusual, and sufficient to show that the netting must have been defective.   Yet this the jury were compelled to do to arrive at the verdict they rendered.

There is no testimony anywhere in this case that the engine threw an *unusual* amount of sparks, nor is there any testimony of its throwing any sparks except as it started from the depot at Kinsley.   Evidence that the engine threw some sparks as it started from

the depot at Kinsley, will not support a finding that the netting was out of repair so as to allow an unusual amount of sparks to escape.

We have also taken the precaution in this case to examine the diagrams attached to the record and forming a part thereof, and, taking them in connection with the balance of the testimony, we are convinced that a new trial should be awarded in this case.

The judgment of the District Court is reversed, and the cause remanded for a new trial.